Luke Busby
NV Bar# 10319
316 California Ave., #82
Reno, NV 89509
O: 775.453.0112
luke@lukeandrewbusbyltd.com
*Designated Resident Nevada Counsel for Plaintiff*

| | |
|---|---|
| Elizabeth Wang* | David B. Owens* |
| LOEVY & LOEVY | Loevy & Loevy c/o |
| 2060 Broadway, Ste. 460 | Civil Rights and Justice Clinic |
| Boulder, CO 80302 | University of Washington Law School |
| O: 720.328.5642 | William H. Gates Hall, Suite 265 |
| elizabethw@loevy.com | P.O. Box 85110 |
| | Seattle, WA 98145-1110 |
| | david@loevy.com |

*admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA (LAS VEGAS)**

| | |
|---|---|
| THE ESTATE OF PAUL LEWIS BROWNING; EX REL, BETTIE BROWNING, ADMINISTRATOR OF THE ESTATE OF PAUL LEWIS BROWNING, | |
| Plaintiff, | Case No. 2:20-cv-1381-KJD-VCF |
| v. | **Plaintiff's Motion for Leave to Amend Complaint** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT; LT. GREG JOLLEY; LT. JOHN CONNER; SGT. F. JERGOVIC; SGT. C. ALBERT; DETECTIVE SGT. MICHAEL BUNKER, #653; DETECTIVE SGT. T. ROSEN; DETECTIVE ROBERT LEONARD, P#471; DETECTIVE H. OREN; DETECTIVE BERT LEVOS, #144; DETECTIVE THORTON; OFFICER GREGORY BRANON, P#2187; OFFICER GARY CALDWELL, P#2301; OFFICER DAVID RADCLIFFE, P#2191; OFFICER R. ROBERTSON, P#120; and IDENTIFICATION SPECIALIST DAVID R. HORN, #C1928, | |
| Defendants. | |

1

Plaintiff THE ESTATE OF PAUL LEWIS BROWNING, *ex rel.* BETTIE BROWNING, ADMINISTRATOR OF THE ESTATE OF PAUL LEWIS BROWNING, pursuant to Federal Rule of Civil Procedure 15, hereby respectfully moves for leave to file a Second Amended Complaint, attached to this motion as Exhibit 1, stating in support as follows:

**INTRODUCTION**

This civil-rights action concerns the wrongful arrest, prosecution, and imprisonment of Paul Lewis Browning for a robbery and murder that he did not commit. Despite his innocence, and due to violations of his constitutional rights, Browning spent more than 30 years of his life on Nevada's death row. Dkt. 43, ¶¶ 2-3. Browning was finally exonerated in 2020. Dkt. 43, ¶¶ 123-24. This action commenced shortly thereafter in July 2020. Dkt. 1.

Just after Christmas, a ruling from the Nevada Supreme Court, *Mack v. Williams* 522 P.3d 434, 439 (Nev. 2022), brought a sea change in state law by affirmatively finding an implied "right of action for money damages," for violations of the Nevada Constitution. Plaintiff respectfully seeks leave to file a Second Amended Complaint to add newly available claims under both Article I, § 8 and Article I, § 18 of the Nevada Constitution against Defendants Las Vegas Metropolitan Police Department ("LVMPD") and former Las Vegas Metropolitan employees.

Given this change in the law and the liberal amendment standard under Federal Rule of Civil Procedure Rule 15, Plaintiff should be permitted to amend the complaint. Because Plaintiff's existing federal claims share common operative facts with newly available claims under the Nevada Constitution, additional discovery is not necessary and amending the complaint should not substantially prejudice Defendants. Moreover, there should be no question that these claims relate back to the Plaintiff's initial filings because these newly available state

constitutional claims mirror the federal claims in both the material facts and relevant legal standards. Accordingly, Plaintiff respectfully seeks leave to file a Second Amended Complaint.

## BACKGROUND

Paul Lewis Browning was exonerated in 2020 after having been forced to spend more than three decades on Nevada's death row for a robbery and murder that he did not commit. Dk. Dkt. 43, ¶¶ 123-24. This action commenced on July 24, 2020, alleging both federal constitutional and state-law claims against Defendants—the LVMPD and former Las Vegas Metropolitan employees—related to Browning's wrongful conviction. Dkt. 1.

Paul Browning tragically passed away on March 23, 2021. Dkt. 36. On June 28, 2021, this Court granted Plaintiff's Motion to Substitute the Estate of Paul Browning for Plaintiff and gave leave to file an Amended Complaint to reflect this change. Dkt. 42. Accordingly, Plaintiff filed a First Amended Complaint ("FAC") on June 29, 2021. Dkt. 43.

Plaintiff's FAC included federal claims related to fabrication of evidence, withholding of evidence, detention without probable cause, failure to intervene, conspiracy to deprive constitutional rights, and policy and custom claims against LVMPD. *See* Dkt. 43, ¶¶ 131-175. Plaintiff's FAC also included Nevada state law claims for malicious prosecution, abuse of process, intentional infliction of emotional distress, civil conspiracy, and indemnification. *See* Dkt. 43, ¶¶ 176-200. The FAC does not advance claims under the Nevada Constitution. While Defendants filed a Motion for Summary Judgment on January 6, 2023, (Dkt. 61), Plaintiff's response in opposition is still forthcoming and Court has not yet ruled on this motion.

Just before 2023, and right before Defendants filed a Motion for Summary Judgment, the Nevada Supreme Court, affirmatively recognized an implied "private right of action for money damages" for violations under the Nevada Constitution. *Mack v. Williams*, 522 P.3d 434, 439

(Nev. 2022). Moreover, the Court held that no "qualified-immunity defense," would apply for such actions. *Id*. As such, *Mack* represents a sea change in state law for violations of rights under the Nevada Constitution.

Counsel for Plaintiff first learned of the Nevada Supreme Court's decision in *Mack* on January 24, 2023. Counsel for Plaintiff then met and conferred with Counsel for Defendants between February 1, 2023 and February 2, 2023. This motion follows.

## DISCUSSION

### I. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a)(2). The Ninth Circuit has made clear that this policy under Rule 15 should "be applied with extreme liberality." *Eminence Capital, LLC v. Aspirin, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). Accordingly, the "standard for granting leave to amend is generous." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1997).

The liberal policy under Rule 15 is designed "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Chudacoff v. U. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981)). Indeed, courts have recognized "there is a strong public policy in favor of permitting amendment." *Underwood v. O'Reilly Auto Enterprises, LLC*, 342 F.R.D. 388, 342 (D. Nev. 2022) (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)).

Moreover, the Ninth Circuit has recognized "[i]t is common practice to allow plaintiffs to amend their pleadings to accommodate changes in the law." *Doe I v. Nestle USA, Inc.,* 766 F.3d 1013, 1028 (9th Cir. 2014). As a consequence, "[i]n the absence of…undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies…undue prejudice to the opposing party…[or] futility of the amendment etc.," Rule 15 requires that leave to amend should be "freely given." *Eminence*, 316 F.3d at 1051 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**II. Plaintiff Should be Permitted to Amend Her Complaint to Add Claims Under Article 1, § 8 and § 18 of the Nevada Constitution.**

**A.** *Mack*'s **Watershed Decision Warrants Amendment**

Before the Nevada Supreme Court decided *Mack v. Williams*, Nevada law had not determined the availability of a private right of action for state constitutional violations as distinct from federal constitutional violations. *See Mack*, 522 P.3d at 440 ("[W]e find no controlling authority on a private plaintiff's ability to enforce the at-issue provisions of the Nevada Constitution.") As such, before *Mack*, plaintiff lacked a private right of action for injuries suffered as a result of their Nevada Constitutional rights having been violated. *Mack* presents a significant shift in Nevada Law.

In *Mack*, the (non-incarcerated) plaintiff alleged that prison officials' unlawful strip search during her visit to the prison violated her right against unreasonable searches and seizures under Article 1, § 18, of the Nevada Constitution. *Id.* However, because there was no "controlling authority" concerning a plaintiff's ability to enforce provisions of the Nevada Constitution by private right of action, this Court certified the actionability of the plaintiff's claims to the Nevada Supreme Court. *Id.* at 440.

The Nevada Supreme Court's decision to even accept certification confirms the newness of its subsequent ruling. Under Nevada law, the state's high court has the discretion to address issues where "no controlling authority exists on those questions of law and they involve

'determinative' matters of the case before the certifying court." *Mack*, 522 P.3d at 440 (quoting NRAP 5(a), and citing *Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 170 (2014)). The *Mack* Court recognized there was "no controlling authority on a private plaintiff's ability to enforce the . . . Nevada Constitution." *Id.*

*Mack* resolved these issues. There, the held that the plaintiff did have a "private right of action against state actors for retrospective monetary relief . . . to enforce [her] search-and-seizure rights under Article 1, Section 18 of the Nevada Constitution." *Id.* at 451. *Mack* reached this conclusion based upon the nature of Nevada Constitutional rules, which are self-executing when the represent a limit on government power. *Id*. at 441. Self-executing rights under the Nevada Constitution do "not depend on or require legislation for the people to enjoy or enforce the rights therein." Id. (citations omitted).

In finding a damages remedy, the Nevada Supreme Court emphasized that it remained "free to interpret [our] own constitutional provisions" as we see fit, regardless of any similarities between our state and federal constitutions." *Mack*, 522 P.3d at 444 (quoting State v. Bayard, 71 P.3d 498, 502 (2003)). In a departure from federal law, Mack applied a "constitutional-tort analysis" to find an implied right of action including a damages remedy for Article 1, Section 18 of the Nevada Constitution. *Id*. at 451.

The court also held that because "[q]ualified immunity is a federal, judicially created doctrine," and because the state legislature had not provided a "state-law equivalent" of the defense, "qualified immunity…is not a defense available to state actors sued for violations of the individual rights enumerated in Nevada's Constitution." *Id.* at 451. Thus, Nevada plaintiffs with dual state and federal constitutional claims may now recover on state constitutional grounds even if their federal claims are subject to federal qualified immunity.

The *Mack* Court reached this decision because it wanted to resolve the right-remedy gap permitted by federal law, as a consequence of doctrines like qualified immunity that permit courts to find constitutional violations but announce that such violations are unremedied by the law. Id. at 448–49 (explaining that a "damages remedy is warranted . . . as monetary relief remains necessary to enforce the provision for individuals in [the plaintiff's] shoes," and because such a remedy "furthers the purpose of the search-and-seizure provision to the extent it acts as a deterrent to government illegality.").

Given *Mack*, Plaintiff requests leave to amend her Complaint to add state claims under Article 1, § 8 (for search and seizure, like Plaintiff's Fourth Amendment claims here) and Article 1, § 18 of the Nevada Constitution (for the right to a fair trial and due process, encompassing Plaintiff's fabrication of evidence, *Brady*, and unreliable identification claims here). These claims fall within the framework developed in *Mack* for addressing actionable constitutional claims because they represent a significant limitation on government power. . As *Mack* explained, "constitutional provisions" that act as "as prohibitions on the state and federal government, are self-executing." *Id.* (citation omitted). Such provisions "'prohibit[s] certain conduct' by the government, as opposed to 'indicat[ing] a general principle or line of policy.'" *Id.* (quoting *Jensen v. Cunningham*, 250 P.3d 465, 481-82 (Utah 2011), and citing *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 662 S.E.2d 66, 71 (2008) (providing that "constitutional provisions in bills of rights ... are usually considered self-executing." as they "specifically prohibit particular conduct" by the government. There is no reasonable dispute that the rules that the government must follow in order to seizure a person via conviction are limitations on government power in the same way that the search-and-seizure/Fourth Amendment rules that govern pre-conviction conduct are. In fact, if anything, the fair trial rights prohibiting the

fabrication of evidence and prohibiting the government from suppressing material evidence, are *more* substantial limitations on government power because the results—a conviction that can result in life imprisonment or even a capitol sentence—are magnitudes greater. *Cf. Mooney v. Holohan,* 294 U.S. 103, 112 (1935) (explaining that "safeguarding the liberty of the citizen against deprivation through the action of the state, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions"). *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963) ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. . . . A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant.").

In addition, these claims arise analogous to the federal constitution. *See Mack*, 522 P.3d at 442 ("Considering the same language in the federal constitution, we have described search-and-seizure rights as 'protect[ion] against 'unreasonable' invasions of privacy ... by the government.'" (quoting *Hiibel v. Sixth Judicial Dist. Court*, 59 P.3d 1201, 1204 (2002) (discussing the Fourth Amendment to the U.S. Constitution, which is substantively identical to Article 1, Section 18 of the Nevada Constitution); *Meeks v. Nevada*, No. 3:10-CV-00558-RCJ, 2011 WL 221774, at *4 (D. Nev. Jan. 20, 2011) (". . . .the Nevada Supreme Court has powerfully implied that rights under the federal and state Due Process Clauses are coextensive."); *Southport Lane Equity II, LLC v. Downey*, 177 F. Supp. 3d 1286, 1291 (D. Nev. 2016) (recognizing that claims brought under Nevada's Due Process Clause are parallel to claims brought under the Due Process Clause of the Fourteenth Amendment).

Accordingly, given *Mack*, Plaintiff seeks leave to amend the complaint to plead

1  violations of fair trial rights and search-and-seizure analogous to those already asserted in the
2  First Amended Complaint.

### III. Plaintiff's Claims Under the Nevada Constitution Relate Back

That Plaintiff's claim relates back to the time of the filing of the original complaint should be uncontroversial. An amended pleading relates back to the original if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." FED. R. CIV. P. 15(c)(1)(B). An amendment adding a new claim satisfies the requirement of Rule 15(c)(1)(B) "if it 'will likely be proved by the same kind of evidence offered in support of the original pleading.'" *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (quoting *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir.1988)). The purpose of the inquiry under Rule 15(c) is to determine whether the "original and amended pleadings share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989).

The text of Nevada's Due Process Clause mirrors that of the Fourteenth Amendment in all relevant aspects, and the Nevada Supreme Court has consistently read the state clause as co-extensive with the federal clause. *See, e.g., State v. Eighth Jud. Dist. Ct. (Logan D.)*, 306 P.3d 369, 377 (Nev. 2013); *Arata v. Faubion*, 161 P.3d 244, 248–49 (Nev. 2007); *Kirkpatrick v. Eighth Judicial Dist. Court*, 64 P.3d 1056, 1059–60 (Nev. 2003). Similarly, the Nevada Supreme Court has consistently analyzed the Fourth Amendment and Nevada's Constitution Article I, § 18 as coextensive in all relevant respects. *See, e.g., State v. Beckman*, 305 P.3d 912, 916 (Nev. 2013); *Cortes v. State*, 260 P.3d 184, 190-91 (Nev. 2011). Therefore, there should be no question that the exact conduct, transaction, or occurrence set forth in the FAC as having deprived

Plaintiff of his federal constitutional rights also serve as the foundation for the amended claims made available by *Mack.* As such, the defendants had fair notice of the conduct that will be called into question. The timing of this motion should be no barrier and will not give rise to any additional litigation about Plaintiff's claim.

**IV. The Amendment is Otherwise Timely, Not Futile, and Amending the Complaint Will Not Prejudice the Defendants.**

As noted, there is a presumption of amendment unless there has been a showing of bad faith, undue delay, futility, or whether the plaintiff has previously amended the complaint as it relates to a problem previously addressed. *See Eminence*, 316 F.3d at 1052. Here, there is—and cannot be—a claim that the amendments here are done in bad faith. The only prior amendment to the complaint was due to the fact that Paul Browning tragically died, not a failure to satisfy Rule 8 or something like that. As for timing, Plaintiff's motion follows the Nevada Supreme Court's decision in *Mack*; and its decision itself also belies any claim that Plaintiff should have advanced the Nevada constitution claims earlier. When this action was filed, when discovery was ongoing, there was no clear authority indicating a damages remedy was available for violations of the Nevada Constitution. Both the fact the federal district court sought to certify the question and the fact that the Nevada Supreme Court accepted certification are powerful evidence that Plaintiff's claims are timely.[1]

Courts may also consider prejudice to the opposing party. Here, there is none. Plaintiff is not adding new defendants. Plaintiff is not seeking additional discovery, as the discovery related to the newly available Nevada constitutional claims is already subsumed in discovery related to the federal claims. The Ninth Circuit has repeatedly held that in order to prevent amendment, the prejudice must be "substantial." *See Duggan v. Hobbs*, 99 F.3d 307, 313 (9th Cir.1996) (citing *Consol. Data Terminals v. Applied Digital Data Sys. Inc.*, 708 F.2d 385, 396 (9th Cir.1983) (stating that "late pleading amendments are improper under [Rule 15] if they

---

[1] As noted, the parties have met and conferred about this motion. Defendants only expressed concern was the timeliness of the motion arguing that the state law claims could have been brought prior to the decision in *Mack*. The very existence of the *Mack* decision forestalls this argument. *See Mack v. Williams*, 522 P.3d 434, 440 (Nev. 2022) (noting that NRAP 5 provides the Nevada Supreme Court with the jurisdiction "to answer questions of Nevada law certified to [it] by federal courts *when no controlling authority exists on those questions of law . . . .*") (emphasis added). As such, both the District Court in certifying the questions and the Nevada Supreme Court in agreeing to answer them, believed that "no controlling authorityexists" stating that there existed private rights of action under either Article I, § 8 or Article I, § 18 of Nevada's Constitution. *Id.*

cause *substantial* prejudice to the opposing party") (emphasis added). No such prejudice exists here, let alone anything at this level.

## CONCLUSION

WHEREFORE Plaintiffs respectfully request an order from this Court permitting the filing of a Second Amended Complaint, a copy of which is attached as Exhibit 1.

Respectfully Submitted,

/s/ David B. Owens
*One of Plaintiffs' Attorneys.*

Luke Busby
NV Bar# 10319
316 California Ave., #82
Reno, NV 89509
O: 775.453.0112
luke@lukeandrewbusbyltd.com
*Designated Resident Nevada Counsel for Plaintiff*

| | |
|---|---|
| Elizabeth Wang* | David B. Owens* |
| LOEVY & LOEVY | Loevy & Loevy c/o |
| 2060 Broadway, Ste. 460 | Civil Rights and Justice Clinic |
| Boulder, CO 80302 | University of Washington Law School |
| O: 720.328.5642 | William H. Gates Hall, Suite 265 |
| elizabethw@loevy.com | P.O. Box 85110 |
| | Seattle, WA 98145-1110 |
| | david@loevy.com |
| | *admitted *pro hac vice* |

# CERTIFICATE OF SERVICE

I, David B. Owens, an attorney, hereby certify that on March 1, 2023, I filed the foregoing Motion using the Court's CM/ECF system, which effectuated service on all counsel of record.

/s/David B. Owens
*One of Plaintiff's Attorneys*

Luke Busby
NV Bar# 10319
316 California Ave., #82
Reno, NV 89509
O: 775.453.0112
luke@lukeandrewbusbyltd.com
*Designated Resident Nevada Counsel for Plaintiff*

| Elizabeth Wang* | David B. Owens* |
|---|---|
| LOEVY & LOEVY | Loevy & Loevy c/o |
| 2060 Broadway, Ste. 460 | Civil Rights and Justice Clinic |
| Boulder, CO 80302 | University of Washington Law School |
| O: 720.328.5642 | William H. Gates Hall, Suite 265 |
| elizabethw@loevy.com | P.O. Box 85110 |
| | Seattle, WA 98145-1110 |
| | david@loevy.com |
| | *admitted pro hac vice |